Fried J. Munder, J.
Coplaintiffs in this action are the Ineorported Village of Port Jefferson, Robert L. Robertson, the village Mayor, and Robert E. Link, the two latter -being residents and taxpayers of the Village of Port Jefferson. They seek a judicial declaration that the incorporation of the village automatically effected its dissociation from the Suffolk County Police District. They assert a right to such relief on several grounds set forth in the first cause of action stated in the complaint, and demand to be restored the amounts paid by the inhabitants of the said incorporated village for real property taxes for the years 196-2-1963 and 1963-1964 for the maintenance of the Suffolk County Police District, and ask that the defendants be restrained from collecting any future taxes for that purpose from the inhabitants of said incorporated village.
For a second cause of action, in the event that it is determined that the village is still a part of the county police district, they ask that the Suffolk County Charter (L. 1958, ch. 278, as amd.), *1085 particularly sections 1206, 1207 and subdivision a of section 1210 thereof, which have to do with the creation, establishment and support of the Suffolk County Police District, be declared invalid as being violative of both the State and Federal Constitutions in many respects, to be separately considered below.
As a third cause of action, whether or not the village is held to be a part of the county police district, the plaintiffs seek a declaration of unconstitutionality of sections 150 and subdivision 4 of section 153 of the County Law and the entire Suffolk County Charter, because of the disproportionate voting strength of the Town Supervisors on the County Board of Supervisors. This they claim constitute a violation of the due process and equal protection clauses of both the State and Federal Constitutions.
The facts are undisputed. By chapter 278 of the Laws of 1958 the Suffolk County Charter became a law on March 21,1958. It required the submission of a resolution at the general election in 1958 to the electors of the county before it became operative as the charter of government for Suffolk County. Upon its adoption by the electorate of the county in November of 1958 it became generally effective on January 1, 1960, following the election of the County Executive pursuant to its provisions at the general election of 1959.
At the time of the referendum on the charter there was also submitted to the electors of all the towns and incorporated villages a proposition for the creation of a County Police Department in Suffolk County and the transfer to such County Police Department of the police functions of the towns and villages. It was to be established only if three or more contiguous towns elected to become part of the County Police District. At the 1959 referendum the five western and contiguous towns elected to become part of the County Police District and transfer their police functions to it. Several of the larger incorporated villages within those towns also so elected. Among the towns so electing was the Town of Brookhaven. One provision of section 1207 of the Suffolk County Charter is that “ [t]he election of any such town or village shall be irrevocable ”,
Following the referendum the Suffolk County Police District was created consisting of the unincorporated territory of the five contiguous towns which had elected to become part thereof and the territory of the incorporated villages within such five contiguous towns which had elected to transfer their police functions to such district.
The territory of the present Incorporated Village of Port Jefferson was then a part of the unincorporated area of the Town of Brookhaven. On April 10, 1963, more than three *1086 years after the creation of the Suffolk County Police District, the Village of Port Jefferson was incorporated. On October 17, 1963, at a special election of the village pursuant to a resolution of the Village Board, the electors voted that the village remain separate from the police district and retain its own police function. Obviously the submission of this proposition was predicated on the assumption that upon the incorporation of the village it ceased to be a part of the Suffolk County Police District.
The plaintiffs apparently base this assumption on sections 34 and 35 of the Village Law under which they claim that, subsequent to its incorporation, a village’s liability to a “ special district” partly included within its boundaries extends only to payment of a proportionate share of the indebtedness previously incurred for such purposes while the “ territory [of the village] was a part of such special district ”. Both of these sections begin: “ If the territory so incorporated as a village includes within its boundaries part of a special district established by the town for a sewer, water, light, fire, park, health, police or any other special district for municipal purposes ”.
Such a contention might bo easily answered, as suggested by the defendants’ counsel, by emphasizing the words “ special district established by the town” and pointing out that the Suffolk County Police District was established under the Suffolk County Charter rather than under the Town Law. But Matter of Davies v. Cheshire (225 App. Div. 822) would, I think, overcome that argument. There the after-incorporated village was declared to be dissociated from the separate, special police district comprised of Nassau County outside of cities and villages although the Nassau County Police District was established by the Legislature and not by a town or towns. A few years after the Davies decision, Mr. Justice Hagarty, who had participated in the Davies decision, wrote in Village of Kensington v. Town of North Hempstead (236 App. Div. 340, 346-347): “Plaintiff cites Matter of Davies v. Cheshire (225 App. Div 822), where this court reversed an order denying a motion for a peremptory mandamus order, requiring the county treasurer to refund money to the village, collected as taxes for the support of the Nassau county police district. That case hinged upon the construction of the Nassau County Police Act, as amended. The question there was whether or not the village of Matinecock, Nassau county, became a special district for county police purposes upon its incorporation on the 2d day of April, 1928. Our conclusion was that the legislation embraced within the enactments considered showed a policy *1087 to leave the villages and cities free to exercise their delegated powers to establish a police force.” And at pages 349 to 350, he further stated: “ It was decided under Laws of 1925, chapter 451, section 3, which, as amended by Laws of 1926, chapter 3, section 1 provided: ‘ The county of Nassau, outside of a city or village or a police district established pursuant to article fourteen-a of the Town Law, is hereby constituted a separate police district. ’ It is apparent that this court decided that the general language included villages thereafter incorporated. ’ ’
It is clear from these explanatory remarks that the decision in the Davies case turned on legislative intent as determined from the language used.
In our case the question is easily resolved. The Suffolk County Charter under which the County Police District was created provides in section 103 that “ [a] 11 special laws relating to Suffolk county and all general laws of the state shall continue in full force and effect except to the extent that such laws have been amended, modified or superseded in their application to Suffolk County by enactment and adoption of this charter.” Thus if the Village Law is in conflict with the Suffolk County Charter the provisions of the charter prevail. Then, too, in section 1207 of the Suffolk County Charter, after providing for the creation of the County Police District, it is provided that ‘ ‘ [t]he election of any such town or village shall be irrevocable ”.
It is difficult to see how much more emphatically the Legislature could have framed its language to demonstrate its intention that, once created, the police district would not thereafter, by any device, be whittled down. That this is consonant with an express legislative policy, at least in respect to the fast-growing Counties of Nassau and Suffolk, is shown by the enactment of chapter 450 of the Laws of 1950, amending section 802 of the County Government Law of Nassau County (Nassau County Charter), in which it is said: “ All portions of any town, unincorporated as a village or a city at the date on which this act becomes effective in the county or not included in a town police district on such date, irrespective of the inclusion thereof in a village or city incorporated or erected after such date, shall continue to be a part of the county police district, provided however, this shall not apply to any territory which may hereafter be annexed to a city or village existing at the date on which this act become[s] effective.” Matter of Davies v. Cheshire (supra), so greatly relied upon by the plaintiffs, in the light of this later amendment to the Nassau County Charter, would, I think, have been differently decided.
*1088 Of passing interest, is the case of Matter of O’Hara v. Board of Supervisors of Suffolk County (42 Misc 2d 716, affd. 44 Misc 2d 572 [App. Term, 2d Dept.]) in which it was held that for tax purposes the Suffolk County Police District is not a ‘ ‘ local ’ ’ district, but an arm of the county government, and that the tax to pay the expense of its maintenance was a general county tax levy as to which a veteran’s exemption applied. It might also be argued that this Legislature-created arm of the county government is not a “special district” within the meaning of sections 34 and 35 of the Village Law.
It follows, then, that the act of incorporation did not automatically dissociate the village from the Suffolk County Police District which its inhabitants, prior to incorporation, as residents of Brookhaven Town, had irrevocably elected to join. The first cause of action must, therefore, be dismissed.
In their second cause of action the plaintiffs claim the application of sections 1206, 1207 and subdivision a of section 1210 of the Suffolk County Charter to the Incorporated Village of Port Jefferson to be unconstitutional for the following reasons:
(1) The charter, if so applied, would, by amending the general provisions of the Village Law with respect to Suffolk County, constitute a “local bill” “ (i)ncorporating villages” in violation of section 17 of article III of the New York State Constitution. (2) The charter, if so applied, would constitute a transfer of a function of local government (police) in violation of section 2 of article IX of the New York State Constitution. (3) The charter, if so applied, would, by not permitting the village the same privileges of voting on the question of transferring their police functions as pre-existing villages, constitute a denial of equal protection of the laws , in violation of Section 11 of article I of the New York State Constitution and of the Fourteenth Amendment to the Constitution of the United States. (4) The charter, if so applied, would, by imposing upon the village the authority of the County Police Department, constitute a deprivation of the village’s right of self-government and home rule in violation of the provisions of “ Article 9, Section 3, of the New York State Constitution ” [sic]. (5) The charter, if so applied, would, by imposing an unfair tax burden upon the taxpayers of the village, constitute a deprivation of liberty and property without due process of law in violation of section 6 of article I of the New York State Constitution and the Fourteenth Amendment to the Constitution of the United States. (6) And, finally, the charter, if so applied, would, in making the election of a town to become part of the County Police District irrevocable, constitute a dis *1089 enfranchisement of the people of the village in violation of section 1 of article I of the New York State Constitution.
The police provisions of the charter have the effect of superseding a newly incorporated village’s authority under section 188-a of the Village Law to establish its own police department. While the constitutional prohibition against local bills “ [i]ncorporating villages ” (N. Y. State Const., art. III, § 17) has been held to cover not only the original incorporation of a village but any subsequent alteration of its charter (Abell v. Clarkson, 237 N. Y. 85; Matter of Cutler v. Herman, 3 N Y 2d 334), I find no case law that holds the prohibition to extend to after-incorporated villages. The legislation here under attack was enacted long prior to the incorporation of the village. It did not incorporate a village, nor did it in any way affect the charter of any existing village. The County Charter was designated an ‘' Act to provide an alternative form of government for Suffolk county ’ ’, and adopted in accordance with the provisions of article IX of the New York State Constitution. The sections devoted to the creation of a County Police District applied equally to the residents of all unincorporated areas. The subsequent decision of the residents of the Village of Port Jefferson to incorporate should not permit them to destroy what they helped to create under a provision that such action was irrevocable. Even a pre-existing village voting to transfer its police functions to the County Police District may not thereafter be withdrawn.
The charge that the enactment of the charter operated to ‘1 transfer ’ ’ a function of local government from the village without the majority consent of its electors in violation of section 2 of article IX of the State Constitution, then in effect, simply is not tenable. The village was not in existence at the time the charter was enacted, and at the time of its incorporation the function of local government in question was one which the village had no initial right to exercise.
Because, as taxpayers of the subsequently incorporated Village of Port Jefferson, the residents thereof did not inherit the right to vote upon and choose their own form of police protection, the pertinent sections of the charter are said to constitute discriminatory and class legislation in violation of the equal protection clauses of the State and Federal Constitutions. When the charter was enacted it affected all persons similarly situated in the same manner. The residents of Port Jefferson, as individuals, were accorded the same privilege to vote for or against becoming a part of the County Police District as was every other resident of the unincorporated areas *1090 of the county, which choice they were warned was to be irrevocable. Having voluntarily elected to become a part of the Police District they should not be permitted a revote on the very same question. Bather than their being denied equal protection of the laws, they seek an unequal privilege.
In answer to the plaintiffs’ claimed deprivation of home rule in violation of section 3 of article IX of the State Constitution, it is not clear just how the cited section reserves to a village the right to perform its own police functions. It is clear, however, that what Chief Judge Demo said in 1857 in People ex rel. Wood v. Draper (15 N. Y. 532, 546-547) as to the then controlling Constitution is as apt today in respect to the current Constitution. He said: “ This position would be unassailable if it could be maintained that the object of police had, by any constitutional provision or arrangement, been irrevocably committed to the counties and cities. But there is nothing in the constitution directly touching the subject of police. If such a provision exists, it must, therefore, be an implied one, and nothing is suggested from which it can be implied, unless it is the provision that county and city officers shall be chosen in counties and cities. But this does not prove that the then existing functions of county and city officers were always to continue and to be performed in the cities and counties. No one will contend that the legislature could not abolish the office and the functions of any officer whose office was not a constitutional one, but was one created simply by a legislative act.”
I find the contentions of counsel, that the charter, if construed so as to make the plaintiff village irrevocably a part of the County Police District, would violate the due process clauses of the State and Federal Constitutions by imposing an unfair tax burden, and in disenfranchising the people by not according them the right to vote again, to be without merit. Having been created as a unit of the county government by popular referendum in accordance with the charter, the legislative implementation of the constitutional authority for an alternative form of county government, the County Police District should not be disembodied except by approval of a majority of the electors of the entire district. The plaintiffs seek, by a change of hats, to avoid unilaterally their own prior commitment. The sanctity of a contract which would bind a private person should be no less cogent, in this circumstance, in respect to the village.
The Suffolk County Charter, in addition to its enactment being specifically authorized by the Constitution of the State *1091 of New York, must itself be “ presumed to be constitutional, and every intendment is in favor of its validity ’ ’. (Farrington v. Pinckney, 1 N Y 2d 74, 78, and cases therein cited; McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 150.) Having been sanctioned by both the legislative and the executive branches of State government it may be struck down only if it is clearly repugnant, directly or by necessary implication, to the Constitution. Here the legislation offends no express limitation nor any necessarily implied inhibition.
In the third cause of action the court is asked to declare unconstitutional sections 150 and subdivision 4 of section 153 of the County Law and the entire charter, particularly sections 201 and 203, and 1206,1207 and subdivision a of section 1210 thereof, as being violative of the due process and equal protection clauses of both State and Federal Constitutions, and to enjoin the defendant Board of Supervisors from continuing to exercise the power conferred by these provisions of law pending the enactment by the Legislature of constitutionally valid statutes and a valid apportionment which will protect the voting rights of the plaintiffs and others similarly situated. These sections, which relate to the composition, general powers and voting structure of the County Board of Supervisors, and its powers to create and maintain a County Police District, are claimed to be unconstitutional because of the disproportionate representation and voting strength provided each town on the Board of Supervisors, with but one supervisor and one vote for each town within the county regardless of population, which in each instance varies considerably.
This attack on the ground of disproportionate representation is, of course, based on the recent decisions of the United States Supreme Court, commencing in March, 1962, with Baker v. Carr (369 U. S. 186) (in which it was held that the equal protection clause of the Fourteenth Amendment of the Federal Constitution would be violated by a statute apportioning legislative districts arbitrarily, and that the plaintiffs had standing to challenge the Tennessee Apportionment Act), and followed in June of this year by Reynolds v. Sims (377 U. S. 533); WMCA, Inc. v. Lomenzo (377 U. S. 633), Maryland Comm. v. Tawes (377 U. S. 656) and others. These cases involved the Legislatures of several States, and it was consistently held that the equal protection clause requires that the houses of a bicameral State Legislature be apportioned substantially on a population basis. They, however, deal only with the apportionment of State Legislatures. In New York [State, the question as to whether the equal protection clauses of our State *1092 and Federal Constitutions require a strict one-man, one-vote republican form of government below the State level remains unresolved.
In the wake of these recent United States Supreme Court decisions, the doctrine of Reynolds v. Sims (supra) wAs applied by a State Circuit Court in the State of Michigan to the challenged apportionment of the Kent County Board of Supervisors in the case of Brouwer v. Bronkema (Sept. 11, 1964). In that case the court held that the equal protection clause of the Fourteenth Amendment to the United States Constitution ‘ ‘ requires that the seats in the Board of Supervisors be apportioned on a population basis ”, though the Michigan Constitution did not so require.
It must be borne in mind, however, that the County of Kent is comprised of 22 townships and 8 cities, and that there had been a definite attempt on the part of the Michigan State Legislature to apportion the members of the Board of Supervisors among the several towns and cities. It was this very legislation, in a State wherein the county was considered the basic unit of government, that was held to be in conflict with the United States Constitution, as establishing apportionment that was not on a population basis. In this State, and particularly in eastern Long Island where the communities patterned their local government upon that of New England, the town was always considered the dominant unit of administration. (See, Early History of Town G-overnment in New York State by Hon. Frank C. Moore, in the preface to the Town Law, Book 61 of McKinney’s Consolidated Laws of New York). As early as 1703 a law was enacted by the General Assembly of the Colony of New York to provide for the election of one supervisor in each town at the annual town meeting for the sole purpose of representing the town on the Board of Supervisors of the county. (L. 1703, ch. 131.) In 1777, the Constitution of the State of New York was adopted. The Constitution so adopted recognized the 14 counties then in existence, among them. Suffolk County, and town government continued to function substantially as it did under English rule.
There is no claim that the supervisors of the towns of Suffolk County are elected on a disproportionate basis; and, since the adoption of the first State Constitution there has been no attempt on the part of the Legislature to apportion the members of the Suffolk County Board of Supervisors among the several towns. There are no cities in Suffolk County nor any special wards or districts for the election of supervisors. Each is chosen by the entire electorate of Ms town and solely by *1093 reason of such election to the town office and by virtue of his occupancy thereof does he sit upon the Board of Supervisors. (County Law, § 150; Town Law, § 20; Lane v. Johnson, 283 N. Y. 244.) There has, then, been no legislation subsequent to the adoption of the State and Federal Constitutions that can be declared to be in conflict with the equal protection clauses thereof, the basic unit of local government within this county having remained virtually unchanged since colonial times.
There is presently pending in the United States District Court for the Eastern District of New York, a civil rights class action seeking a judgment declaring as unconstitutional the Suffolk County Charter. A motion to dismiss the complaint was denied by the court which held that the allegations of the complaint stated a justiciable constitutional cause of action, citing the Baker case (supra). (Bianchi v. Griffing, 217 F. Supp. 166.) The motion was renewed before a three-judge statutory court and is, as yet, undecided. Under these circumstances, and in view of the lack of appellate court precedent in New York State, I think it would be inappropriate for this court, a State court of first instance, to make the novel determination that the equal protection clauses of our State and Federal Constitutions require that the towns of Suffolk County should elect a greater number of supervisors or that the vote of each supervisor should be weighted so that a form of proportional representation on a population basis will obtain in respect to the Suffolk County Board of Supervisors and thus overturn the governmental system which has been continuously in practice for more than 260 years. I prefer to rest on the presumption of constitutional validity of the legislation herein assailed. (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 150.)
The complaint is therefore dismissed.
The companion proceeding herein, whereby the Treasurer of the Incorporated Village of Port Jefferson seeks from the County Treasurer a refund of all sums representing taxes levied and collected against real property within the village since its incorporation to pay annual expenses of the County Police Department, is, for the same reasons, also dismissed.