In the Matter of KENFORD COMPANY, INC., Appellant, *v.* LEGISLA-
TURE OF THE COUNTY OF ERIE et al., Respondents.

KENFORD COMPANY, INC., Respondent, *v.* LEGISLATURE OF THE
COUNTY OF ERIE et al., Appellants.

Fourth Department, July 5, 1974.

*Hodgson, Russ, Andrews, Woods & Goodyear (Victor T. Fuzak* of counsel), for Kenford Company, Inc., appellant.

*James L. Magavern, County Attorney (Martin A. Schnorr* of counsel), for Legislature of County of Erie and another, respondents.

*Dominic J. Terranova* (*Timothy J. Dwan* of counsel), for O. R. Connelly, respondent.

GOLDMAN, J. Petitioner Kenford Company, Inc. [Kenford] brought this article 78 proceeding against the Legislature of the County of Erie [County] and O. R. Connelly as Receiver of Taxes and Assessments of the Town of Lancaster, New York [Town] to set aside and have declared void certain tax bills relating to properties in the Town of Lancaster for the fiscal years of 1972 and 1973. Kenford also attempted to enjoin enforcement or collection of the bills by the respondents. Special Term denied Kenford's motion for summary judgment and also denied the cross motion of the County and the Town, holding that there were issues of fact relating to a purported transfer of title by Kenford to the County. We do not find the question of title relevant to the legal questions presented by the motions and believe that Special Term should have granted petitioner-appellant Kenford's application for summary judgment.

This proceeding arose from an abortive effort made by the County to construct a domed stadium on land originally owned by one E. H. Cottrell and transferred by him to Kenford, of which corporation Cottrell is president. The six parcels of property, which are the subject of the contested tax bills, were parts of larger parcels owned by Cottrell. An agreement was entered into on August 8, 1969 by and among the County, Kenford and The Dome Stadium, Inc. [Dome] by the terms of which Kenford agreed to transfer title to 178 acres, which included the six parcels here involved, to the County without monetary consideration, in return for which the County would at its expense construct the stadium and would give Dome the right to operate it under a 40-year lease or management contract. Cottrell was one of the principal stockholders of Dome as well as Kenford.

On May 7, 1970 Kenford purported to convey to the County the parcels which are the subject of the contested tax bills by recording a deed in the County Clerk's office. The County contends that there was not an effective transfer of title by this recording, for it was the unilateral action of Kenford and was without delivery to or acceptance by the County. After the recording of the purported deed a copy of it was presented to the assessing officials of the Town who thereupon noted upon the Town's records that transfer of the properties had been made to the County by Kenford and the properties were then marked upon the rolls as tax exempt.

The efforts to proceed with the construction of the domed stadium faltered and were ultimately abandoned. After it became certain that there would not be a domed stadium on the site in question, Kenford requested the County to reconvey the properties to it by delivery of a quitclaim deed. The deed was duly executed and delivered to Kenford by the County on September 20, 1972.

On December 27, 1972 the County adopted the following resolution:

"RESOLVED that in response to the November 3, 1972 petition of the Commissioner of Finance, regarding land in the Town of Lancaster, identified as account numbers, 1-121-100, 1-122-100, 1-162-100, 3-109-100, 7-20-10 and 7-20-40, the following is hereby authorized:

(1) Cancellation of the 1972 County Tax wherein a tax was levied for a special district charge against the County of Erie concerning said lands.

(2) Correction of the 1972 tax rolls to reflect ownership of said lands by Kenford Company, Inc.

(3) Issuance of corrected County tax bills for the year 1972 to Kenford Company, Inc., payment on which will be accepted without penalty for 30 days after legislative authorization.

(4) A correction in the name of the owner of said parcels of land to Kenford Company, Inc., on the 1973 tax rolls by the Tax Preparation Department.

(5) An amendment of the warrant on the 1973 tax rolls to reflect the adjusted tax.

(6) The submission of an amended report identifying the above changes on the 1973 tax roll by the Bureau of Tax Equalization."

Pursuant to the resolution the County issued tax bills to Kenford for fiscal years 1972 and 1973 and Kenford thereupon instituted this article 78 proceeding seeking judgment declaring the tax bills in question null and void.

The parties have raised many questions which are not germane to the determination of this appeal. Simply stated, there is but one issue for determination, namely, did the County have the right to tax petitioner's properties for the fiscal years 1972 and 1973 by the single act of adoption of the resolution of December 27, 1972?

The requirements with respect to the assessment, levy and collection of real property taxes in the County are set forth in section 3-1.0 of the Erie County Tax Act [Act], adopted as a special law by the New York State Legislature (L. 1942,

ch. 812, as amd. by L. 1969, ch. 682). Under section 3–1.0 of the Act " the taxable status of all real property situated in the county of Erie shall be fixed on the first day of June of each year for state, county, town and school district tax purposes of the ensuing county, town and school district fiscal year ". The taxable status of the parcels became fixed for the fiscal year 1972 on June 1, 1971 and for the fiscal year 1973 on June 1, 1972. On both of those dates the taxable status of the properties on the assessment and tax rolls showed that the properties were owned by the County and exempt from State, county, town and school district taxes. Exhibits annexed to the petition verify the exempt status of the properties.

The Town completed the assessment roll for the Town for fiscal year 1972 on or before June 24, 1971. No bill for 1972 county, town, school or special assessments was ever sent to or received by petitioner and no notice whatsoever of those bills was given to petitioner. The same situation existed as to tax rolls for 1973, the Town Board of Assessors having completed the assessment roll for fiscal year 1973 prior to June 24, 1972. The statutory notice period during which the assessment roll was open for inspection and finally completed and filed with the Town Clerk was August 1, 1971 for the fiscal year 1972 and September 1, 1972 for the fiscal year 1973. At no time during the periods above specified were the properties described as owned by or taxable to petitioner and no notice to that effect was given to petitioner. So far as the tax rolls indicated, the properties for the years in question were exempt from State, county, town and school district taxes. It was not until December 27, 1972 that any effort was made by the County Legislature to correct its records and by the correction make petitioner liable for the 1972 and 1973 taxes. The resolution completely ignored the Act, and the County could not by this action make petitioner responsible for the taxes for the years in question.

The County urges that the Act serves merely as an alternative approach to the procedure outlined in section 558 of the Real Property Tax Law. Petitioner contends that subdivision 2 of that section requires notice and hearing when property which has not been taxed had not been previously valued. The County counters by asserting that the properties had been previously valued and that under subdivision 1 of section 558 no notice or hearing is required. Section 558, contends the County, is the mechanism to overhaul the assessment rolls and is authority for correcting isolated incidents of error, such as in the instant case. The County's position, with respect to this choice

of statutes, and its right to use section 558 as an alternative method of procedure, is untenable. Section 1606 of the Real Property Tax Law expressly provides that it shall not be deemed to repeal or otherwise affect "the provisions of any special or local law or ordinance of any county, city or village charter, or other special form of government" unless it is otherwise amended or repealed. It expressly declares the intention of the Legislature that such local enactments are not superseded or controlled by the general law and are to continue in full force and effect unless otherwise amended or repealed. Thus, certain provisions of State statutes have been held inapplicable in localities where special acts govern the taxation of real property (58 N. Y. Jur., Taxation, § 70, n. 10).

Section 3–2.0 of the Erie County Tax Act provides: "*Except as in this act provided*, all of the provisions of law of the state of New York prescribing and affecting the mode of assessment of real property, shall apply to the assessment of real property in the county of Erie for state, county, town and school district tax purposes." (Emphasis supplied.) The County argues that this provision of the Act does not specifically exclude the applicability of section 558. We cannot agree with this reasoning. The local Act fully covers the situation which confronts us and effectively removes, in this instance, the general statute from its sphere of influence in Erie County tax assessment matters.

As stated in McKinney's Statutes (Cons. Laws of N. Y., Book 1, § 396) a general law will not repeal a special law by implication "unless there is such inconsistency that the two cannot stand together, so that the intent to repeal is manifest". The construction we adopt is well set forth in section 396, which provides in pertinent part: "A special and local law is not impliedly repealed by a subsequent general law covering the same subject, where the Legislature in enacting the later statute was not dealing directly with the subject of the earlier special and local law, the special law is part of a system of local administration, and a reasonable motive can be assigned for retaining the special and peculiar privileges of the special act. A local taxing statute which is a complete taxing program for a particular locality is not superseded by a general tax law."

Article X of the Act outlines specific procedures which must be followed to effect the relevy of legal or erroneous taxes. The County argues that it could have followed the procedures set forth in the Act or utilized the procedures in the Real Property Tax Law. It states in its brief: "Article X provides for an entire new assessment roll and a complete rerun of the tax

assessment and procedure including filing, levying, spreading, publication, hearings, etc. and is cumbersome and ill-suited to the correction of isolated errors. In contrast, section 558 of the Real Property Law provides a simple mechanism for the correction of isolated errors affecting the application of a tax to a particular property and is the appropriate remedy in this case." If respondents had proceeded under the Act, the failure to give notice would have made the attempted act of reassessment invalid. If the question were to be resolved under section 558, notice would still be necessary. The requirement of notice is quite properly built into all assessment procedures, and, indeed, should be.

The legal principle which is determinative of the case at bar is succinctly stated by the Court of Appeals in *Matter of Douglas* v. *Board of Supervisors* (172 N. Y. 309, 315): " There must be notice in some form, or at least adequate means of knowledge equivalent to notice, such as a general statute presumed to be known to all, or a proper advertisement fixing the time and place for a hearing, before a valid tax can be finally imposed either *in personam* or *in rem*. The taxpayer has an absolute right to be heard before some officer or tribunal authorized to correct errors, and unless this right is afforded any attempt at taxation is neither binding upon him personally nor a charge upon his property. In a recent case we held that where a levy of a tax was void because it was assessed in the name of one who was not the owner or occupant, it could not be cured even by a statute, nor be made a valid lien upon the lands except by proceedings for reassessment, requiring a hearing and notice to the owner or occupant. (*Hagner* v. *Hall*, 10 App. Div. 581; affirmed, on opinion below, 159 N. Y. 552.) " Although more than 70 years old, this decision is as relevant today in dealing with reassessment procedures as when written. For similar holdings mandating notice as a due process requirement, see *Western N. Y. & Pa. Ry. Co.* v. *City of Buffalo* (176 Misc. 350, 354–355, affd. 264 App. Div. 832, affd. 290 N. Y. 702); *Matter of City of New York (801–815 E. New York Ave.)* (290 N. Y. 236, 240); *New York Tel. Co.* v. *Taylor* (64 N. Y. S. 2d 323, 325–326); *O'Flynn* v. *Village of East Rochester* (24 N. Y. S. 2d 437, 442).

Since the applicable procedures for assessment of tax were not followed, the question of ownership or title on the respective tax dates is not material to our determination. As indicated above, Special Term erred in its decision that summary judgment could not be granted for the reason that there is

"the issue of fact with regard to that question as to whether or not title was transferred", and in directing "that a jury trial is hereby ordered of the issues of fact pertaining to the question of transfer of title to the property in question by the petitioner to the County of Erie by deed recorded May 7, 1970, and the matter of ownership of the property in question on the taxable status dates, June 1, 1971, and June 1, 1972". The question of whether the unilateral action of Kenford in recording the deed without proof of delivery or acceptance makes the attempted conveyance nugatory is in no way material to the resolution of this appeal. That question may ultimately be resolved in other litigation between the parties. We have been informed that some other action, about which we have no knowledge, has already been instituted. The attempt to resolve the title question in this proceeding is premature.

The order should be reversed and petitioner-appellant's motion for summary judgment should be granted.

MARSH, P. J., WITMER and SIMONS, JJ., concur.

Order unanimously reversed with costs and petitioner-appellant's motion for summary judgment granted.