OPINION OF THE COURT
John W. Sweeny, J.
By the instant proceeding, petitioners, in their capacities as supervisors of certain townships within Orange County, seek a judgment vacating the 1976 Orange County equalization rates established by the County Executive and declaring subdivision (c) of section 3.02 of the Orange County Charter (Local Laws, 1968, No. 8 of County of Orange) unconstitutional.
The County Executive established the 1976 county equalization rate at 100% for all of the tax districts within Orange *960 County pursuant to the authority vested in him by subdivision (c) of section 3.02 of the Orange County Charter. Subdivision (c) of section 3.02 authorizes and directs the County Executive to "[determine and fix real property tax equalization rates among the various taxing districts of the county for county purposes and file the same with the county legislature on or before the first day of November in each year.”
Petitioners challenge the power of the county to vest the equalization function in the County Executive.
Unless a statute specifically provides otherwise, legislative and discretionary powers vested in the governing body of a municipality cannot be delegated to the administrative officials of the municipality (56 Am Jur 2d, Municipal Corporations, § 196; 2 McQuillin, Municipal Corporations, § 10.40). Since the power to establish county equalization rates is by no means purely ministerial or administrative in nature, this function cannot be delegated to the office of the County Executive without some clear enabling legislation providing for such a transfer. The function in question is an important one which is an incident of the local power of taxation. "Nothing short of the most positive and explicit language can justify the court in holding, that the legislature intended to confer such a power on a [county] officer” (Thompson v Schermerhorn, 6 NY 92, 96).
Section 800 of the Real Property Tax Law provides: "The board of supervisors of each county shall be the county equalization agency except that the board of supervisors of any county may by resolution determine that commissioners of equalization, appointed as provided in section eight hundred two of this chapter, shall be the county equalization agency.”
The statutory scheme of article 8 of the Real Property Tax Law indicates a specific designation of the county legislative body, or its designated commissioners, as the County Equalization0 Agency. Section 802 of the Real Property Tax Law painstakingly establishes the residential requirements and political makeup of the alternate three-member commission. There is no authority in this enactment for a county legislative body to transfer this power to a county executive.
Petitioners argue that the County Charter provision in question violates the mandate of article IX (§ 2, subd [c]) of the New York Constitution which specifically requires that local laws be consistent with the Constitution and any general law.
*961 Respondents allege that this provision of the Constitution is not controlling because article IX (§1, subd [h]) thereof provides specific constitutional authority for a county to transfer the function of equalization from the legislative to its executive branch of government.
Article IX (§ 1, subd [h]), entitled "Bill of rights for local governments”, provides that a county in its adoption of an alternate form of government "may transfer one or more functions or duties of the county, or of the cities, towns, villages, districts or other units of government wholly contained in such county to each other”, (Emphasis supplied.)
Section 33 (subd 4, par c) of the County Charter Law (Municipal Home Rule Law, art 4, part 1) implements this latter provision of the State Constitution by authorizing a county charter to "provide for the transfer of one or more functions or duties of the county or of the cities, towns, villages * * * to each other. ” (Emphasis supplied.)
It seems clear to this court that article IX (§1, subd [h]) and the implementing statute, both of which specifically refer to transfers of functions to "each other,” only authorize an intergovernmental transfer of functions between the county and the various governmental subdivisions, or districts contained therein. What is envisioned in the Constitution and the statute is authority for counties, cities, towns and villages to consent to transfer to each other, for purposes of economy and efficiency, overlapping and similar functions performed by each (Lockport v Citizens for Community Action, 430 US 259).
Therefore, incidents of zoning power can be transferred from a town to a county (Matter of Town of Smithtown v Howell, 31 NY2d 365); the function of providing police protection can be transferred by a town or village to a county (Incorporated Vil. of Port Jefferson v Board of Supervisors of County of Suffolk, 44 Misc 2d 1083, affd 26 AD2d 700, affd 21 NY2d 663); public health functions may be transferred between the various political subdivisions of a county (1971 Opns Atty Gen 187); and, the function of municipal purchasing may be transferred from a city to the appropriate office of a county (1973 Opns Atty Gen 231).
This court is not aware of any case in which the provisions of article IX (§1, subd [h]) of the State Constitution and its implementing statute, section 33 (subd 4, par c) of the Municipal Home Rule Law, have been construed as authority for an intragovernmental transfer of a specific statutorily conferred *962 legislative power to another branch (i.e., the executive) within the same unit of municipal government. The Court of Appeals in Matter of Town of Smithtown (supra, p 376) interpreted section 33 as authority for transfers of functions "from one layer of local government to another”, viz., inter- and not intragovernmental transfers. Therefore, this court must reject respondent’s arguments which are based on the authority of article IX (§ 1, subd [h]) of the New York Constitution and section 33 (subd 4, par c) of the Municipal Home Rule Law.
The next issue to be resolved is whether the State Legislature intended to permit a county to transfer the function of equalization to its executive office when it enacted section 33 (subd 3, par c) of the Municipal Home Rule Law.
The respondent county argues that this subdivision (subd 3, par c) contains explicit statutory authority for such a transfer. The enactment states that a County Charter shall provide for "[t]he equalization of real property taxes consistent with standards prescribed by the legislature.” (Emphasis supplied.)
The language of this subdivision (subd 3, par c) is unusual in that while other parts of article 4 require consistency with State laws, the Legislature has only required that county charter provisions concerning county equalization be consistent with standards prescribed by the State Legislature. Standing by itself, this subdivision might appear to support respondents’ contention that the provisions of article 8 of the Real Property Tax Law are not binding on counties since they are not strictly speaking standards as are the provisions of sections 300-306 and section 804 of that enactment.
It does not appear to be necessary to discern the intention of the Legislature when it used the word "standards” in subdivision 3 since subdivision 1 of section 33 of the Municipal Home Rule Law very clearly has made all county charter provisions "subject to restrictions * * * in any other applicable law”. (Emphasis supplied.)
Reading these two provisions of section 33 together, as we must to ascertain the intention of the Legislature (cf. McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 97, 98), a charter provision pertaining to the function of equalization must comply with the provisions of the general law, section 800 of the Real Property Tax Law. By its very language, section 800 meets the requirements for a "General law” (NY Const, art IX, subd [d], par [1]; cf. also Matter of Kenford Co. v Legislature of County of Erie, 45 AD2d 210, 214). Therefore, in *963 respondent’s County Charter, the obligation for county equalization must remain with the County Legislature or in its commissioners as designated by the statute.
Additionally, the court notes that charter provisions which purport to transfer a governmental function must adhere to the provisions of article 4 of the Municipal Home Rule Law. Subdivision 3 of section 34 thereof provides that the charter "shall not supersede any general or special law enacted by the legislature * * * c. Which requires that specified functions of government be performed by * * * units of local government, except that any of such functions may be transferred to other units of local government, agencies or officers as authorized by this article”. (Emphasis supplied.) Here we have a clear expression of the State Legislature permitting intragovernmental transfers of functions if authorized by some other provision within article 4.
However, the only authorization for transfer of functions contained in article 4 is that set forth in section 33 (subd 4, par c) which, as previously indicated, authorizes only intergovernmental transfers of functions between the county, cities, towns, villages, etc.
Both article IX (§ 3, subd [c]) of the State Constitution and subdivision 3 of section 35 of the Municipal Home Rule Law require that the powers granted to local governments be liberally construed.
However, what appears to be a more extensive grant of home rule power in one subdivision of article 4 is nullified by the absolute restrictions in another (cf. Note, Home Rule and the New York Constitution, 66 Col L Rev 1145).
If, for the sake of argument, the establishment of county equalization rates is viewed merely as an administrative act article IX (§ 2, subd [c], par [8]) of the New York Constitution requires that a county’s administration of local taxes be consistent with laws enacted by the Legislature. Therefore, the provisions of article 8 of the Real Property Tax Law could not be superseded by the charter provisions in question.
Finally, irrespective of all the constitutional and statutory provisions heretofore mentioned, subdivision (c) of section 3.02 would appear to constitute an invalid attempt to transfer a legislative function since there are absolutely no guidelines or standards set forth therein to proscribe the power being conveyed (cf. Martin v State Liq. Auth., 43 Misc 2d 682 *964 [Cooke, J.], affd upon opn rendered at Special Term 15 NY2d 707).
For all the above reasons, this court is constrained to declare that subdivision (c) of section 3.02 of the Orange County Charter, which purports to transfer the power to establish county equalization rates from the county legislative body to the County Executive, is invalid. Accordingly, the 1976 county equalization rates as established under the authority of this charter provision are declared void and are hereby vacated.