OPINION OF THE COURT
Arthur D. Spatt, J.
BACKGROUND
On June 5, 1936, the “Alternative County Government Law”, chapter 879 of the Laws of 1936, was enacted into law by the New York State Legislature. On Election Day, 1936, the voters of this county adopted the terms of said act; and, as of January 1, 1938, the “County Government Law of Nassau County”, referred to as the “Nassau County Charter”, became effective. On April 12,1939, the Legislature enacted, at chapter 272 of the Laws of 1939, the Nassau County Administrative Code, a supplement to the County Charter.
The Nassau County Charter established the structure by which the county was, and is, to be governed. The “Department of Police”, a fundamental part of that structure, was addressed at sections 801 through 804 of article VIII of the *300 charter, and at sections 8-18.0 through 8.22.0 of the Administrative Code.
Sections 801 and 802 of the charter continued the “organization, powers and duties” of the then existing Nassau County Police Department, and continued the geographical jurisdiction of said department within the area known as the “Nassau County Police District”. Specifically, when sections 801 to 804 are read together and in conjunction with section 8-18.0 of the Administrative Code, the Nassau County Police District was comprised of the following geographical areas:
“1. That part of the county outside of any city, village or the Port Washington police district.
“2. Those villages which elected to become part of the county police district prior to the first day of January, nineteen hundred thirty-eight.
“3. Those cites, villages or the Port Washington police district which, after the first day of January, nineteen hundred thirty-eight, elect to become part of the county police district subject to their right of withdrawal therefrom, as provided in section eight hundred three of the charter.”
Subdivisions 1 and 2 above noted relate to those areas of the county which, prior to the adoption of the charter, were part of the Nassau County Police District., Subdivision 3, reflecting the terms of section 803 of the charter, concerns those areas of the county which, although not part of the Nassau County Police District prior to the adoption of the charter, requested entrance into the district subsequent thereto.
Section 803 of the Nassau County Charter provides, in pertinent part, as follows: “§ 803. Entrance into and withdrawal from county police district * * * any village or police district not a part of the county police district at the date on which this act becomes effective in the county may by resolution of its board of trustees or other governing body, request that the territory of such *** village or police district become a part of the county police district on the first day of January next succeeding the effective date of such ordinance or resolution and that its police force he *301 made part of the county police force. Thereupon, the board of supervisors, if it shall approve the request, may, by resolution, constitute the territory of such *** village or town police district a precinct or a part of the precinct of the county, and constitute the police force of such city, village or town police district members of the police force of the county. In the instance *** of a village *** police district to which the rules of the state civil service commission have been extended, the police force of such *** village *** shall become members of the police force of the county with such rank as shall be certified to the board of supervisors by the civil service commission having jurisdiction thereof. In the case of all other villages *** the police force of such village *** shall become members of the police force of the county with such rank as may be agreed upon by the board of supervisors and the governing body of such village *** police district. Any such * * * village may withdraw from the county police district on the thirty-first day of December of any year, provided that such ordinance or resolution shall not go into effect for thirty days after its adoption” (emphasis supplied).
Further, section 804 of the Nassau County Charter provides a means by which a village, not yet part of the County Police District and not wishing to “merge” therein, pursuant to section 803, may contract with the County Police Department for the department “to provide a specified degree and type of police protection at a price to be set forth in such contract.” However, to the extent that the county police undertakes to provide such specified protection, section 804 of the charter provides that members of the village police force, formerly performing such duties, are to become members of the county force.
Just prior to the enactment of the Nassau County Charter, it appears that the Incorporated Village of Woods-burgh, a defendant herein, was not a part of the Nassau County Police District, but, rather, maintained its own three-member Village Police Department, pursuant to the provisions of the then section 188-a et seq. of the Village Law. It further appears that by a resolution of said village’s Board of Trustees, dated June 23, 1937, said village requested that, pursuant to section 804 of the charter, it be *302 included within the County Police District. It further appears that on June 28, 1937, the Nassau County Board of Supervisors adopted the following resolution:
“whereas, the Incorporated Village of Woodsburgh, by resolution of its Board of Trustees adopted on the 23rd day of June, 1937, and pursuant to statute has requested that the territory of the said Incorporated Village of Woods-burgh be included within the Police District of the County of Nassau, effective July 1st, 1937; now, therefore, be it
“resolved, that the request of the said Incorporated Village of Woodsburgh through its Board of Trustees, be and the same is hereby granted; and further
“resolved, that the territory comprising the Incorporated Village of Woodsburgh be and the same is hereby included within the Fourth Precinct of the Police District of the County of Nassau on and after July 1st, 1937 ***
“As provided in Section 17, three patrolmen now performing duty in the Incorporated Villages of Woodsburgh and Hewlett Neck are transferred to the Police Department, County of Nassau, and will receive the same compensation as members of like grade in the Police Department, County of Nassau.”
By approving the village’s request to become part of the Nassau County Police Department, the county undertook, pursuant to section 8-22.0 of the Administrative Code, to provide the following services to the village:
“1. Preserve the public peace.
“2. Prevent crime.
“3. Detect and arrest offenders.
“4. Protect the rights of persons and property.
“5. Guard the public health.
“6. Preserve order at elections and all public meetings and assemblages.
“7. Remove nuisances existing in public streets, roads, places and highways and arrest all street mendicants and beggars.
“8. Regulate the movement of teams and vehicles in streets, roads, places and highways.
*303 “9. Provide proper police attendance at fires.”
It is undisputed that between July 1, 1937 and August 16,1976 the Nassau County Police Department, and solely that Police Department, undertook to provide such services to the residents of the Village of Woodsburgh.
On August 16, 1976, the Trustees of the Village of Woodsburgh, defendants herein, enacted the following resolution: “resolved, that the Board of Trustees shall have the authority to appoint such personnel as, in its discretion may be required, to issue summonses and citations for violations of local laws and ordinances of Village of Woods-burgh. This position shall be called ‘Constable’.”
It appears that in 1978, the Board of Trustees superseded the afore-mentioned resolution with a “local law”, creating a “Village Constables Department”, referred to by defendants’ counsel as an “organization of ‘peace officers’ ”. It is asserted by plaintiff herein — and not denied by defendants that, pursuant to the afore-mentioned resolution, the village “appointed certain personnel known as village constables who were given authority to issue summonses for moving violations under the Vehicle and Traffic Law and other police duties”.
Indeed, counsel for the defendants notes as follows: “the New York State Department of Motor Vehicles considers the Woodsburgh vehicles [driven by the constables] to be ‘police vehicles’ and the officers to be ‘police officers’ under the Vehicle and Traffic Law. Our patrol cars do not require license plates or registration. Our officers have immediate access to the confidential information contained in the Department of Motor Vehicles computers. Further, it should be noted that the same confidential information is provided to our Constables by the Nassau County Police Department through their local computer terminals.”
At paragraph 3(b) of the affidavit of intervenors submitted in support of summary judgment, it is further alleged, without contradiction, that “the Village Constabulary patrols the Village of Woodsburgh, which is made up of approximately 200 homes, approximately 817 people, and which has approximately V-A miles of roadway, and these patrols are made on a regular, frequent and continuing basis.”
*304 THE NATURE OF THIS ACTION
By a summons and complaint dated July 31,1979, plaintiffs herein, the County of Nassau and the Nassau County Civil Service Commission, commenced this action wherein the following relief is sought:
1. A permanent injunction enjoining and restraining defendants Village of Woodsburgh and its trustees from employing the services of the village constables, by whatever name or title they may be given; and/or enjoining the village constables from issuing appearance tickets or from taking any other action to enforce the Vehicle and Traffic Law or performing any other police functions.
2. For a money judgment, pursuant to subdivision 2 of section 102 of the Civil Service Law, against defendant Incorporated Village of Woodsburgh and the trustees in their representative and individual capacities, for the amount of moneys allegedly “illegally” paid to the village constables from the date of their initial appointment.
Plaintiffs’ request for a permanent injunction, as set forth above, is premised upon their contention that the Village of Woodsburgh gave up all of its “police function” to the county in 1937. Plaintiffs argue that, pursuant to the terms of the Nassau County Charter and the New York State Constitution, defendants are precluded from establishing and funding its own local “Department of Constables”, which group concededly performs duties already undertaken by the county police.
Plaintiffs’ request for a money judgment is premised upon their contention that, in employing village constables, the village and its trustees have failed to comply with the provisions of sections 95,100 and 102 of the Civil Service Law, specifically, that there are “no outstanding certifications from the Nassau County Civil Service Commission” with respect to the appointment of such village constables.
By a verified answer and counterclaim dated August 28, 1979, defendants deny any illegality in the appointment of the constables and assert that said appointments are in compliance with the New York State Constitution, the Municipal Home Rule Law, the Village Law, the Criminal Procedure Law and the Civil Service Law.
*305 As to their alleged violation of the Civil Service Law, defendants argue that, in fact, the Nassau County Civil Service Commission did issue certificates of certification for the positions of constable, but that, in May, 1978, said commission wrongfully withdrew such certification. In addition to a dismissal of the complaint, defendants request, by way of counterclaim, that an order issue directing the Nassau County Civil Service Commission to approve the certification of the positions of constable.
By an order of this court dated November 16, 1979 (Robbins, J.), some 92 resident taxpayers of the Village of Woodsburgh were granted leave to intervene in this action. On November 20, 1979, said intervenors served their answer.
As an affirmative defense, the intervenors assert that plaintiffs herein lack standing to maintain this action. This court finds such contention to be without merit.
Reading the intervenors’ answer as a whole, their position may be summarized as follows: that the establishment of the constabulary by the Village of Woodsburgh and the trustees thereof was not an illegal act but was an “appropriate use” of their authority pursuant to the provisions of the Municipal Home Rule Law, the Village Law and the Penal Law. Further, it is asserted by way of both affirmative defense and a cross claim that the attempt of the plaintiffs herein to enjoin the activities of the constables is a violation of the intervenors’ and defendants’ rights under the Municipal Home Rule Law and the Village Law, and an infringement of the intervenors’ constitutional rights (United States and New York State) in that “it [the injunction, if granted] amounts to a diminution in the value of their property without due process of law.”
With regard to this last noted argument, the intervenors’ answer alleges, in pertinent part, as follows:
“24. That the appointment of the Constabulary is an act which has diminished the incidents of crime within the village of woodsburgh and increased police presence with the said village.
“25. That the appointment of the Constabulary is an act which has enhanced and increased the property value of *306 the intervenors herein by making Woodsburgh a safer and better place to live.
“26. That the lawsuit by the county of Nassau directly threatens to diminish the property values of the intervenors herein and amounts to a partial confiscation of their property or a deprivation of their property, in violation of the Constitutions of the State of New York and of the United States.
“27. That the action of the county of Nassau, in addition to partially confiscating the property of the intervenors by diminishing their property values, would also, if successful, deprive the intervenors and all others similarly situated of the presence of the Constabulary, increase the incident of crime, endanger the families and children of the intervenors, and leave them without lawful protection, which is constitutionally theirs ***
“40. That the presence of the Constabulary affords the residents of the village and in particular, the intervenors herein and all others similarly situated, of a constant, visible police protection, which has not been afforded by the county of Nassau.” (Emphasis supplied.)
The intervenors further allege in their answer that the relief sought by plaintiffs would, if granted, result in “a violation of the constitutional and statutory guarantees of the rights of the intervenors *** to protect their own property and interests.”
In addition, the intervenors assert that defendant Village of Woodsburgh complied with the requirements of the Civil Service Law and that the Civil Service Commission improperly withdrew its certification.
Finally, the intervenors contend that plaintiff has no right to seek reimbursement from the defendants for sums expended for the constables, and that such reimbursement, if granted, would place an inequitable “tax burden” on intervenors. Indeed, intervenors allege that they have been damaged by plaintiffs’ institution of this action and seek a money judgment against plaintiffs in an unspecified sum to recover the cost of counsel fees expended by the defendants in defending this action.
*307 THE NATURE OF THIS MOTION
Defendants move this court for an order, pursuant to CPLR 3212, granting them summary judgment dismissing the complaint.
The intervenors cross-move for the identical relief.
Plaintiffs cross-moved for an order, pursuant to CPLR 3212 (subd [b]), granting them summary judgment on the complaint and granting the injunctive and other relief requested therein.
DOES SUMMARY JUDGMENT LIE?
In determining a motion for summary judgment, CPLR 3212 (subd [b]) provides, in part, that “the motion shall be denied if any party shall show facts sufficient to require a trial of any issue of fact”.
“It is *** incumbent upon a moving party to present evidentiary facts clearly showing the validity of his cause of action and that, as a matter of law, a defense cannot be sustained.” (4 Weinstein-Korn-Miller, NY Civ Prac, par 3212.12; emphasis supplied; see, also, Zuckerman v City of New York, 49 NY2d 557.)
“Where the court entertains any doubt as to whether a material and triable issue of fact exists, summary judgment will be denied.” (4 Weinstein-Korn-Miller, NY Civ Prac, par 3212.12; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 3212.)
Thus, the test to be applied by the court on such a motion has been set forth as follows: “The test on a motion for summary judgment is whether there are issues of fact properly to be resolved by a jury (Hartford Acc. & Ind. Co. v Wesolowski, 33 NY2d 169). The opponent of such a motion must come forward with evidentiary facts sufficient to raise a triable issue of fact (Freedman v Chemical Constr. Corp., 43 NY2d 260) and a shadowy semblance of an issue or bald conclusory assertions, even if believable, are not enough (Capelin Assoc. v Globe Mfg. Corp., 34 NY2d 338).” (Gelb v Bucknell Press, 69 AD2d 829, 830; see, also, Zuckerman v City of New York, supra.)
With respect to that aspect of this case which arises out of defendants’ alleged violation of the terms of the Civil *308 Service Law, plaintiffs’ claim for money damages from said violation and those portions of the intervenors’ answer which concerns such violation of the Civil Service Law, and any claim by intervenors for damages arising from plaintiffs’ maintenance of the action with respect to the alleged Civil Service Law violation, the court, upon a review of all the affidavits submitted, finds that the motion of defendant and cross motions of plaintiff and intervenors for summary judgment with respect to such issue must be denied.
Initially, it must be noted that no evidentiary fact(s) have been presented by plaintiffs, defendants, or the intervenors with respect to the civil service issue. Plaintiffs’ and defendants’ moving papers speak exclusively through the affidavits of their respective counsel, which affidavits do not, as to the civil service issue, incorporate or refer to any documentary evidence. The intervenors’ affidavit, although by a party, asserts only conclusory assertions with respect to such issue. Further, no party has submitted legal argument with respect to this issue.
Second, and even more significantly, even if it be assumed that the affidavits of counsel were deemed to be “evidence”, it is apparent from a reading of them, that, as to the “civil service” issue, there exists an apparent conflict as to material issues of fact. Such conflict can only be resolved after trial. For example, did the defendants fail to properly obtain a civil service certification? Did plaintiff issue a “certification” for the constables’ position at issue herein, and, if so, was there an improper withdrawal of same? There is no agreement by the parties as to these operative facts. Only after these and other contested facts are resolved can the questions of law, to wit: plaintiffs’ claim to money damages pursuant to subdivision 2 of section 102 of the Civil Service Law, and defendants’ and intervenors’ defenses and cross claim with respect to such claim, also be resolved.
With respect to the central issue in this case, to wit: should this court enjoin the. Village of Woodsburgh from maintaining a constabulary, a different picture is presented. While the plaintiffs and defendants have not, in the strict sense, presented “evidentiary material”, and while each presents its factual and legal argument through affi *309 davits of counsel, it is apparent that there is no dispute as to the operative facts underlying the controversy. Indeed, such facts are set forth above and designated “Background”.
The court is thus presented with a purely “legal issue”, which can be resolved without the necessity of a trial.
THE CONTENTIONS OF THE PARTIES
The legal argument of defendants, adopted by the intervenors, is concisely summarized at page 9 of defendants’ affidavit in support of its motion, in the following terms: “the local law duly adopted by the elected Board of Trustees of the Incorporated Village of Woodsburgh [creating the constabulary] is wholly consistent with the ideals and spirit, as well as the letter of the general laws of the State, including the Constitution of the State of New York, the Municipal Home Rule Law, the Criminal Procedure Law, the Vehicle and Traffic Law, and the Village Law.” Defendants go on to assert that: “Not only does the Village Board have the absolute right to enact the legislation which is the subject of this action, there is an absolute obligation to do so for the well-being of the residents of the Village and to all who come under the jurisdiction and control of the Village.”
Further, contrary to plaintiffs’ claims (recounted below) that the creation of a local constabulary, performing “coordinate”, overlapping functions to those performed by the Nassau County police, is contrary and repugnant to the terms of the Nassau County Charter and Administrative Code, defendants (and interveners) argue that such instruments contain no such prohibition. However, defendants go further. They argue that even if the charter contained such prohibition, same would be inconsistent with the general law of the State, and thus, void.
Defendant’s statutory argument, in summary fashion, is as follows:
Initially, defendants point to section 2 (subd [c], par [ii], cl [10]) of article IX of the New York State Constitution which provides, in pertinent part, as follows:
“every local government shall have power to adopt and amend local laws not inconsistent with the provisions of this *310 constitution or any general law relating to the following subjects, whether or not they relate to the property, affairs or government of such local government, except to the extent that the legislature shall restrict the adoption of such a local law relating to other than the property, affairs or government of such local government:
* * *
“(10) The government, protection, order, conduct, safety, health and well-being of persons or property therein.” (Emphasis supplied.)
Pursuant to subdivision (c) of section 3 of article IX of the Constitution, defendants contend that this constitutional grant of power to local governments must be “liberally construed”.
Defendants next point to section 10 (subd 1, par [ii], cl a, subcl [12]) of the Municipal Home Rule Law, enacted as chapter 843 of the Laws of 1963 as amended by chapter 1136 of the Laws of 1969, which statute implements article IX of the State Constitution. Section 10 (subd 1, par [ii], cl a, subcl [12]) provides that a local government shall have the power to adopt local laws “not inconsistent with *** the constitution or *** with *** any general law, relating to *** (12) The government, protection, order, conduct, safety, health and well-being of persons or property therein. This provision shall include but not be limited to the power to adopt local laws providing for the regulation or licensing of occupations or businesses”.
Defendants next cite subdivision 1 of section 50 of the Municipal Home Rule Law, which provides, in pertinent part, as follows: “It is the intention of the legislature by this chapter *** to enable local governments to adopt and amend local laws for the purpose of fully and completely exercising the powers granted to them under the terms and spirit of [article IX of the Constitution].”
Defendants then point to subdivision 1 of section 4-412 of the Village Law which grants the trustees of a village the power to: “take all measures *** which shall be deemed * * * desirable for the good government of the village * * * the protection of its property, the safety, health, comfort and general welfare of its inhabitants, the protec *311 tion of their property, the preservation of peace and good order”.
Relying upon the afore-mentioned constitutional and statutory provisions (concededly “general law”), and an opinion of this court, to wit: Matter of Metzgar v Elar (78 Misc 2d 1002) construing section 10 (subd 1, par [ii], cl a, subcl [12]) of the Municipal Home Rule Law, defendants argue that the trustees of a village are empowered to protect the safety, health and general welfare of the inhabitants thereof — and in exercising such authority, may appoint “special police”, “peace officers” and “constables”, by whatever name designated. Defendants further note that pursuant to the definition contained at subdivision 5 of section 2 of the Municipal Home Rule Law, the Nassau County Charter is a “local law”. Thus, argue defendants, to the extent that the Nassau County Charter is inimicable to the maintenance of the constabulary, the village law establishing same, consistent with general, law, must prevail.
Having set forth their alleged statutory basis for appointing constables, defendants next argue that, pursuant to statutory authority, said constables are empowered to undertake those duties which, in fact, they are performing.
Defendants point to section 10 (subd 4, par [a]) of the Municipal Home Rule Law, as amended by chapter 495 of the Laws of 1978, which provides, in pertinent part, as follows:
“4. In the exercise of its powers to adopt and amend local laws, the legislative body of a local government shall have power:
“(a) To delegate to any officer or agency of such local government the power to *** authorize issuance of an appearance ticket by a public servant who, by virtue of office, title or position is authorized or required to enforce any statute, local law, ordinance, rule or regulation relating to parking, licensing of occupations or businesses, fire prevention and safety, health and sanitation, and building, zoning and planning; provided however, that a peace officer may be authorized to issue an appearance ticket relating to enforcement of any statute, local law, ordinance, *312 rule or regulation affecting the public health, safety and welfare.” (Emphasis supplied.)
Defendants next note that CPL 2.10 (subd 1) defines “Constables” as “peace officers”, and that CPL 2.20 (subd 4) grants peace officers “the power to issue appearance tickets pursuant to subdivision three of section 150.20 of this chapter”.
In this regard, CPL 150.20 provides as follows: “3. A public servant other than a police officer, who is specially authorized by *** law *** to issue and serve appearance tickets with respect to designated offenses of less than felony grade, may in such cases issue and serve upon a person an appearance ticket when he has reasonable cause to believe that such person has committed a misdemeanor, or has committed a petty offense in his presence.”
Finally, defendants note that section 132 of the Vehicle and Traffic defines a police officer as follows: “[e]very member of the state police and every duly designated peace officer.”
Thus, defendants argue that notwithstanding the village’s 1937 merger with the Nassau County Police District, the Trustees of the Village of Woodsburgh had the authority to appoint constables; that the constables are authorized to issue appearance tickets and enforce local laws; that the constables are properly trained and are, in fact, reducing the rate of crime; and that plaintiffs’ complaint is, as a matter of law, meritless and should be dismissed.
Plaintiffs do not dispute the accuracy of defendants’ statutory citations, nor do they dispute that, if such statutes are applicable, defendants’ interpretation of same would, in general, be accurate. Rather, plaintiffs argue that defendants’ statutory construction is irrelevant to the issue presented in this case. Specifically, defendants contend that while, theoretically, a village may have the authority, in certain circumstances, to appoint “peace officers”, the Village of Woodsburgh, on the facts of this case, does not have the authority.
Plaintiffs argue that when in 1937 the Village of Woods-burgh voluntarily entered the Nassau County Police District, it “divested” itself of ány and all of its “police furic *313 tions”. Thus, argue plaintiffs, “It is clear from the statutory scheme inherent in the entire county government law and administrative code that the statute [Nassau County Charter] envisions either entering a county police district and so obtaining police protection, or not entering * * * one can be in or out of the police district, one can enter or withdraw from it and one can even contract with it, but one cannot [as the Village of Woodsburgh] be part of the police district and then establish one’s own independent police force, creating duplication, confusion and chaos.” Plaintiffs bolster their argument by reliance upon an opinion of the Attorney-General dated December 15, 1976, which supports such conclusion.
Thus, assert plaintiffs, as the Village of Woodsburgh divested itself of its police function, it may not, short of withdrawing from the Nassau County Police District, maintain a co-ordinate police presence within the village. As such, the establishment of the village constabulary was illegal, and the maintenance of same should be enjoined.
CONCLUSIONS
Does the Village of Woodsburgh, having opted in 1937 to become part of the Nassau County Police District, now have authority to maintain an independent constabulary having “criminal” jurisdiction, while still part of the Nassau County Police District? For the reasons set forth below, this court finds it does not have such authority.
At the time of the adoption of the Nassau County Charter, the Village of Woodsburgh, pursuant to then section 188-a et seq. of the Village Law (now Village Law, § 8-800 et seq.), was vested with the authority to maintain its own Village Police Department.
Article VIII of the Nassau County Charter provided a mechanism by which the villages in Nassau County could transfer, in whole or in part, the authority as set forth in the Village Law, and merge their departments with that of the county.
The provision in the charter permitting such a transfer of the “police” function was authorized by the terms of section 26 of article III of the 1894 Constitution of the State of New York, then in effect (renum Const of 1938, art IX, *314 §§ 1-3; then renum Const of 1964, art IX, § 1, subd [h], par [1]). Such constitutional provision directed that the Legislature “shall provide by law for the organization and government of counties and shall provide by law alternative forms of government for counties”, and expressly provided “Any such [alternate] form of government may provide for * * * the transfer of any or all of the functions and duties of the county and the cities, towns,, villages, districts and other units of government contained in such county to each other * * * without regard to * * * any other provisions of this constitution inconsistent herewith.”
Thus, pursuant to this provision, any power vested in a local government by the Constitution may be superseded by a specific delegation thereof contained in a county charter.* (See, generally, Incorporated Vil. of Atlantic Beach v Town of Hempstead, 47 Misc 2d 29, revd 27 AD2d 556, affd 19 NY2d 928.)
Further, section 2605 of the Nassau County Charter provides, in pertinent part, as follows: “Whenever such alternative form is adopted in a county [as it was in Nassau], the terms thereof shal [sic] be of effect therein, anything in any general laws of this state passed prior to such adoption to the contrary notwithstanding.”
So that once the Nassau County Charter was adopted, not only did the provisions of such charter, to the extent that it provided for a transfer of power, supersede those powers provided the municipality by the Constitution, but it also superseded those “local powers” provided to the municipality by general law (Village Law). (See Incorporated Vil. of Port Jefferson v Board of Supervisors of County of Suffolk, 44 Misc 2d 1083, affd 26 AD2d 700, affd 21 NY2d 663; also see Century Fed. Sav. & Loan Assn. of Long Is. v Incorporated Vil. of Atlantic Beach, 86 Misc 2d 863.)
Section 33 (subd 4, par c) of the Municipal Home Rule Law, other provisions of which are referred to by the defendants, implements the “transfer of function” provision of the State Constitution by authorizing a county *315 charter to “provide for the transfer of one or more functions or duties of the county or of the cities, towns, villages *** to each other.” (See Matter of Heimbach v Mills, 91 Misc 2d 958.)
Therefore, it is clear that a county charter may, as in the case of the Nassau County Charter, provide for the transfer from a village to a county of a village zoning power, as well as the function of providing police protection. (Matter of Heimbach v Mills, supra; and see, generally, 62 CJS, Municipal Corporations, § 563.)
When the Village of Woodsburgh decided to merge its Village Police Department with that of the county in 1937, it took advantage of the “transfer” provision of the county charter as authorized by the State Constitution. What was the legislative intent behind the decision to permit such merger of police functions? The case of Matter of Superior Police Officers Benevolent Assn. v Hamill, 13 NYS2d 348, 352, affd 258 App Div 354), in analyzing the same portion of the Nassau County Charter at issue herein, discussed such legislative intent in the following terms: “In enacting the County Charter, it would seem that the intention of the legislature was to encourage the elimination of independent police organizations and to concentrate them in one department under one head. The charter provides for a method whereby the Police Departments of upwards of sixty incorporated villages could be readily centralized by the action of the Village Board and the Board of Supervisors, thus eliminating an overlapping of governmental functions which must necessarily inure to the benefit of the taxpayers. The charter sets up the machinery for carrying out such merger and became a law subsequent to the enactment of the last amendment of Section 188-a of the Village Law. Clearly, the intent of the legislature was to provide by the County Charter an all inclusive procedure for such merger which superseded any then existing law in so far as the same related to Nassau County. Furthermore, the County Charter did not become effective until adopted by the qualified electors of the county.” (Emphasis supplied.)
Thus, subsequent to the Village of Woodsburgh’s merger with the Nassau County Police District, said village, notwithstanding any authority generally found in the State *316 Constitution, Municipal Home Rule, Village Law and Criminal Procedure Law, was divested of any authority to maintain an independent police department. In this regard, this case is distinguishable from Matter of Metzgar v Elar (78 Misc 2d 1002, supra), in that in Metzgar, there / was no indication that the village, seeking authority under the Municipal Home Rule Law, had divested itself of the power now sought.
Query: does such divestiture by the Village of Woods-burgh also preclude the village from maintaining a local constabulary as an adjunct to its (the county’s) police force? The answer, in this court’s opinion, is yes.
In certain circumstances, a local municipality, having had certain of its powers transferred to another municipality, may retain some of the powers peripheral to those transferred. (See Century Fed. Sav. & Loan Assn. of Long Is. v Incorporated Vil. of Atlantic Beach, 86 Misc 2d 863, supra.)
If, in fact, the Village of Woodsburgh does have a “residual” power to appoint local constables, such power must be found in the general laws of this State; for the court finds that any “residual” power which may be claimed to arise out of the general provisions of the State Constitution and Municipal Home Rule Law, as argued by defendants, is superseded by the specific divestiture of these powers by the county charter.
Section 8-802 of the Village Law provides that “policemen” appointed by a village “shall have all the powers and be subject to the duties and liabilities of constables of towns in serving process in any civil action or proceeding.”
As to designation of “constables”, section 20 of the Town Law provides, in pertinent part, as follows: “In any town in which a town police department has been established pursuant to law, or which town is a part of a county police district, the town board may appoint not more than four civil officers who shall possess all the powers and duties of constables in civil actions and proceedings only, and shall be paid no salary by the town board but shall be entitled to collect the statutory fees allowed by law in such civil actions and proceedings.” (Emphasis supplied; see, generally, 1968 Opns Atty Gen 112.)
*317 From this statutory authority can be drawn a general legislative intent vis-a-vis constables, to wit: where there is in existence a “town police department” (or village), the local constabulary maintained by such municipality shall be as an adjunct to the police department, limited in number, and have only “civil” jurisdiction.
This policy is reiterated at section 121-a of the General Municipal Law, wherein it is provided, in pertinent part, as follows: “Upon the creation of a joint town and village police department as herein provided, the term of office of all town constables heretofore elected in such town or towns shall terminate and thereafter no constables shall be elected in any such town, unless and until such police department is abolished as hereinafter provided.”
When the Village of Woodsburgh chose to become part of the Nassau County Police District, there was an “elimination” of the local village police organization. The village could have retained a portion of its police function by simply contracting with the county for certain specified services. It chose not to retain any portion of its police department.
Similarly, the village can regain its police function by a voluntary withdrawal from the Nassau County Police District. Absent such withdrawal, the police function for the Village of Woodsburgh is centralized in the county district. Such centralization expresses the Legislature’s policy to avoid an “overlapping of governmental” functions.
Apparently expressing the same legislative policy to avoid “overlapping governmental functions”, especially in such a sensitive area as police protection, the Legislature, in the statutory authority set forth above, has expressed its intent not to permit a local municipality, already possessed of a police department, to establish an independent, and likely overlapping local constabulary, possessed of a “police function”. Defendants’ argument that such co-ordinate protection allegedly afforded by a constabulary is beneficial to the local residents and deters crime — as well as plaintiffs’ contention that such is not the case — are arguments which may be appropriate should further legislation be sought, but do not change the current posture of the law.
*318 Therefore, the court determines that the establishment and maintenance of the Village of Woodsburgh constabulary is not statutorily authorized, and, accordingly, the permanent injunction sought by plaintiffs herein should be, and is, granted.
Therefore, plaintiffs’ motion for summary judgment, insofar as the complaint seeks to enjoin the defendants from maintaining a constabulary, is granted. Further, defendants’ counterclaim, which seeks an order compelling plaintiffs to provide a civil service certification for the position of constable, is rendered moot by this decision, and summary judgment is granted to plaintiffs with respect thereto, namely, that said counterclaim is dismissed. The remaining issues in this case, as set forth above, pertaining to the question of fact with regard to defendants’ alleged failure to obtain civil service certification is hereby severed from this case and shall proceed to trial.

 Given such State constitutional sanction to the delegation of the village’s power to maintain a police force, the intervenors’ contention, without citing authority, that the elimination of the constabulary will result in a deprivation of their “constitutional due process rights”, is without merit.